UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SAFETY NATIONAL CASUALTY CORPORATION, *et al.*, § § § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. H-05-2159 |
| § | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, § § § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Safety National Casualty Corporation's ("Safety National") motion to compel the production of previously withheld documents from fifty (50) alien files, pursuant to the parties' Alternative Dispute Resolution (ADR) agreement. The Department of Homeland Security ("DHS") opposes this production on the grounds that the disputed materials are not discoverable under either the rules of civil discovery (because this case arises under the APA, which limits judicial review to the administrative record) or the ADR agreement (which contains an exception for "privileged or otherwise protected documents"). After reviewing the parties' filings and the applicable law, the Court finds that the motion to compel, Docket No. 45, should be and hereby is **GRANTED**. The Court hereby **ORDERS** DHS to produce the files in their entirety, with the exception only of documents properly subject to the attorney-client privilege, the informer's privilege, or work product protection, within ten (10) days of the issuance of this Memorandum and Order.

**I.     BACKGROUND**

Safety National is a surety company authorized by the Department of the Treasury to issue federal bonds, including immigration delivery bonds. An alien may use an immigration delivery bond to procure his release from the custody of DHS's Bureau of Immigration and Customs Enforcement (ICE), pending the outcome of deportation proceedings against him. An immigration delivery bond is a contract, akin to a bail bond, between Safety National – acting through its agent, AAA Bonding Agency, Inc. ("AAA")[1] – and DHS. By issuing the bond, Safety National guarantees that it will produce the alien upon demand by DHS. If Safety National fails to produce the alien, it is in breach of the bond and is liable for the bond's face value and any interest that accrues between the time of the breach and the time of payment.

In recent years, an increasing number of disputes has arisen between Safety National and DHS concerning alleged bond breaches. Safety National claims that DHS has demanded payment of bonds that were not actually breached or to which Safety National has asserted valid defenses, and that DHS has refused to comply with valid requests for information made pursuant to the Freedom of Information Act (FOIA). DHS argues that Safety National has an abnormally high percentage of bond breaches and that Safety National's frequent failure to stay apprised of the whereabouts of bonded aliens constitutes a national security risk.

In March 2005, DHS asked the Department of the Treasury to decertify Safety National, thereby depriving it of the ability to issue new immigration delivery bonds. To date, however, the Treasury Department has taken no action against Safety National. In

---

[1] Hereinafter, the Court will refer to Safety National and AAA collectively as "Safety National" and to DHS and ICE collectively as "DHS."

June 2005, Safety National filed this suit, seeking an injunction compelling DHS to recognize Safety National's defenses, cancel the disputed bonds, and comply with Safety National's FOIA requests. Several months later, DHS sent a letter to Safety National stating that, as of September 9, 2005, DHS would no longer accept immigration delivery bonds issued by Safety National.

When the Court learned of DHS's intention to begin refusing bonds issued by Safety National, it requested that DHS postpone the date on which its determination would take effect. The Court further asked that DHS release to Safety National information regarding fifty disputed bonds, in an effort to resolve the conflict without judicial intervention. On December 9, 2005, the Court enjoined DHS from refusing to accept Safety National bonds, pending the resolution of this suit. The Court directed the parties to move forward with the production and review of the fifty test files, pursuant to the ADR agreement. While DHS has, in recent months, produced some documents from those files, it continues to withhold approximately 2,000 documents on the grounds that they are privileged or otherwise protected.

At recent hearings, the Court has repeatedly directed DHS to produce all documents not subject to the attorney-client privilege, the informer's privilege, or the work product protection. DHS has consistently refused to do so, citing a "FOIA privilege" and a "law enforcement" privilege, neither of which finds support in the law of this Circuit. While the Court understands the importance and sensitivity of the work that DHS performs, the rules of discovery and the ADR agreement prioritize disclosure, not secrecy. DHS cannot now assert nonexistent privileges to avoid the Federal Rules or the provisions of an agreement to which DHS is a signatory.

To the extent, if any, then, that this Court's prior rulings were unclear or subject to varying interpretations, the Court wishes to take this opportunity to clarify them. DHS is hereby **ORDERED** to produce all non-privileged documents – that is, all documents not subject to one of the three protections named above – within ten (10) days of the issuance of this Memorandum and Order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 18th day of April, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**