IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-20330

In re: UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Petitioner.

---

Upon Petition for Writ of Mandamus to the United States
District Court for the
Southern District of Texas, Houston

---

## DISTRICT COURT'S RESPONSE TO DEFENDANT'S MOTION FOR WRIT OF MANDAMUS

On April 18, 2006, the undersigned granted Plaintiffs' motion to compel and ordered Defendant to produce fifty bond files, subject to the parties' alternative dispute resolution (ADR) agreement – with the exception only of documents subject to the attorney-client or informer's privileges or work product protection, on or before April 28, 2006. The Court of Appeals has invited a response to the petition for writ of mandamus filed by the Department of Homeland Security ("DHS"), which seeks to reverse that order. This response is submitted because of the district court's continuing concern regarding the candor of DHS's representations to this Court and because of DHS's history of promising production of documents that are, in the event, never produced.

**I.  Background**

Safety National is a surety company authorized by the Department of the Treasury to issue federal bonds, including immigration delivery bonds. An alien may use an

immigration delivery bond to procure his release from the custody of the Department of Homeland Security's (DHS) Bureau of Immigration and Customs Enforcement (ICE), pending the outcome of deportation proceedings against him.  An immigration delivery bond is a contract, akin to a bail bond, between Safety National – acting through its agent, AAA Bonding Agency, Inc. ("AAA")[1] – and DHS.  By issuing the bond, Safety National guarantees that it will produce the alien upon demand by DHS.  If Safety National fails to produce the alien, it is in breach of the bond and is liable for the bond's face value and any interest that accrues between the time of the breach and the time of payment.

In recent years, an increasing number of disputes has arisen between Safety National and DHS concerning alleged bond breaches.  Safety National claims that DHS has demanded payment of bonds that were not actually breached or to which Safety National has asserted valid defenses, and that DHS has refused to comply with valid requests for information made pursuant to the Freedom of Information Act (FOIA).  DHS argues that Safety National has an abnormally high percentage of bond breaches and that Safety National's frequent failure to stay apprised of the whereabouts of bonded aliens constitutes a national security risk.

In March 2005, DHS asked the Department of the Treasury to decertify Safety National, thereby depriving it of the ability to issue new immigration delivery bonds.  To date, however, the Treasury Department has taken no action against Safety National.[2]  In June 2005, Safety National filed this suit, seeking an injunction compelling DHS to

---

[1] Hereinafter, the undersigned will refer to Safety National and AAA collectively as "Safety National" and to DHS and ICE collectively as "DHS."
[2] At the most recent hearing before the district court, DHS indicated that the Treasury proceeding remains pending.

2

recognize Safety National's defenses, cancel the disputed bonds, and comply with Safety National's FOIA requests. In August 2005, DHS sent a letter to Safety National stating that, as of September 9, 2005, DHS would no longer accept immigration delivery bonds issued by Safety National. The letter stated that Safety National would be granted an opportunity to meet with a DHS representative before September 9, 2005, to show cause why DHS's determination should not be implemented.

When the district court learned of DHS's intention to begin refusing bonds issued by Safety National, it requested that DHS (1) postpone the date on which its determination would take effect and (2) release to Safety National information regarding fifty disputed bonds, in an effort to resolve the conflict without judicial intervention. On December 9, 2005, the court enjoined DHS from refusing to accept Safety National bonds, pending the resolution of this suit, and directed the parties to move forward with the production and review of the fifty test files, pursuant to the ADR agreement. While DHS has, in recent months, produced some documents from those files, it continues to withhold approximately 2,000 documents on the grounds that they are privileged or otherwise protected, citing the Freedom of Information Act ("FOIA") and the law enforcement privilege.

## II.   DHS's Assertion of a "FOIA Privilege"

In its written and oral representations to the undersigned and in its privilege log, DHS has repeatedly invoked a "FOIA privilege" to justify its withholding numerous documents from the fifty files to be produced subject to the ADR agreement. Counsel for DHS has consistently asserted that, because the underlying dispute is governed by the Administrative Procedure Act (APA), DHS need not produce any documents that would

3

not be subject to mandatory disclosure in response to a FOIA request. DHS has provided neither the undersigned nor this Court with any citations to precedent, binding or persuasive, that supports its FOIA theory.

While it is true that, as a rule, a court deciding an APA case is limited to a review of the record upon which the administrative agency premised its findings, the parties to this case adopted an ADR agreement, drafted by DHS, that provided for discovery of additional documents not included in the administrative record. Having contractually committed to a discovery scheme mandating broader disclosure than the law would otherwise require, DHS cannot now reassert its right to limited APA discovery in an effort to protect documents that it does not wish to produce.

In response to this holding by the district court, DHS argued, and continues to argue, that the "privileged or otherwise protected" exemption included in the ADR agreement contemplates the withholding of materials not required to be disclosed under the FOIA. This Court has, however, expressly rejected the contention that the FOIA created a discovery exemption:

> [H]ad Congress intended the [FOIA] to apply to judicial discovery proceedings, there would be no need for the provisions giving aggrieved parties a right to redress through the federal district courts. . . .
> The FOIA provides a comprehensive scheme for private parties to obtain agency records. The Act contemplates that a party seeking disclosure of agency records available under 5 U.S.C.A. § 552(a)(1), (2) shall request such records from the agency. If the agency then refuses this request, § 552(a)(4)(B) confers jurisdiction on the district court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *See Apicella v. McNeil Laboratories, Inc.*, 66 F.R.D. 78 (E.D.N.Y. 1975). The burden is then on the agency to establish entitlement to one of the exemptions found in § 552(b). *See, e.g.*, *B & C Tire Co., Inc. v. Internal Revenue Service*, 376 F. Supp. 708 (N.D. Ala. 1974).
> In a criminal case the discovery proceedings are governed by the Federal Rules of Criminal Procedure, promulgated pursuant to 18

4

>U.S.C.A. §§ 3771, 3772.  Since Congress has the power to regulate the practice and procedures in the federal courts, *Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 9, 61 S. Ct. 422, 85 L. Ed. 479 (1941), had Congress intended to amend the explicit discovery procedures set forth in Rule 16, FED. R. CRIM. P., by enactment of the FOIA, it undoubtedly could have done so.  No such intention appears in either the Act or its legislative history.

*United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977).  The *Murdock* reasoning is, of course, equally applicable in the civil context, in which the Federal Rules of Civil Procedure govern discovery.  Accordingly, because no FOIA exemption applies to civil discovery and because the ADR agreement does not expressly exempt documents not procurable under the FOIA,[3] the district court found, and this Court should hold, that all documents withheld on the ground of a "FOIA privilege" must be produced.

### III.    The Law Enforcement Privilege

DHS has also withheld numerous documents subject to its assertion of the law enforcement privilege.  At the outset, the undersigned notes that DHS failed to present to the district court, in timely fashion, any Fifth Circuit case law pertaining to the law enforcement privilege.  Indeed, DHS's *only* submission containing any citations to binding precedent regarding this issue consisted of a surreply to Plaintiffs' motion to compel, which was filed without leave of court or of opposing counsel, without notice to any party or to the district court, three weeks after DHS's original response to the motion was filed and two weeks after Plaintiffs filed their reply to that response, and mere hours before the scheduled hearing on the motion to compel.  While this Court is, of course, at liberty to apply its own case law in any manner that it chooses, the undersigned respectfully suggests that it would have been appropriate for DHS to submit these

---

[3] As noted above, Defendants authored the ADR agreement.  It is a general rule of contract interpretation that the language of a contract is to be construed against the drafter.  *See, e.g.*, *Harris v. Parker College of Chiropractic*, 286 F.3d 790, 793 (5th Cir. 2002).

citations, which were repeatedly requested both by Plaintiffs and by the district court, at such a time and in such a manner as to allow the district court to consider them in reaching its decision.[4]

As it happens, however, even the inclusion of the cited precedents in a timely-filed pleading would not have changed the outcome of the district court proceedings concerning the motion to compel, as each of the cases is distinguishable, in important respects, from the instant case. In *Brown v. Thompson*, 430 F.2d 1214 (5th Cir. 1970), for example, this Court held that any privilege inhering in government documents "will expire upon the lapse of an unreasonable length of time," *id.* at 1215, and that the applicability of such a privilege is "within the discretion of the trial court and, like other discretionary matters, the determination of the court should be made by a balancing of interests," *id.* According to the *Brown* Court, "[i]t is the unusual and exceptional case where the determination of the trial court is set aside." *Id.* at 1216.

Here, the government is asserting a privilege unbounded by time or relevance. DHS contends that all government files containing information that might reveal the nature of a governmental investigative technique or the identity of a government agent (undercover or otherwise) are exempt, in their entirety, from discovery, so long as the technique is still in use by some arm of the government or the agent is still employed by the government (or, possibly, so long as the agent is alive). Not only does DHS's interpretation render this Court's "unreasonable length of time" standard a nullity, it also creates an enormous potential for abuse by (likely well-meaning) government officials, who will be able to avoid production of any government file merely by inserting one

---

[4] In light of DHS's lack of candor as to the precedents upon which it was relying, the most extensive relief that DHS should realistically seek is a remand to the district court to allow the fact-finder to consider evidence as to factual and legal issues not previously raised there.

6

document containing such "privileged" information. Indeed, it is precisely this result that will, whether intended or not, obtain in the instant case if DHS's position is adopted by this Court.

Moreover, even were this Court to determine that its previously imposed temporal limitation was ill-advised, the law enforcement privilege would nonetheless be inapplicable here, because the privilege is recognized in this Circuit only in the context of ongoing *criminal* investigations, not in civil deportation proceedings like those at issue in this case. *See id.* (involving efforts to obtain files and records of police and highway patrol investigations); *Swanner v. United States*, 406 F.2d 716, 718-19 (5th Cir. 1969) ("[W]hile pendency of a *criminal* investigation is a reason for denying discovery of investigative reports, this privilege would not apply indefinitely . . . .") (emphasis added). Other circuits have reached the same conclusion. *See Dellwood Farms, Inc. v. Cargill*, 128 F.3d 1122, 1125 (7th Cir. 1997) ("It seems to us . . . that there ought to be a pretty strong presumption against lifting the privilege. . . . Otherwise the courts will be thrust too deeply into the *criminal* investigative process.") (emphasis added); *In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988) (involving SEC records pertaining to alleged securities law violations); *In re Dep't of Investigation of City of New York*, 856 F.2d 481 (2d Cir. 1988) (involving a criminal defendant's attempt to subpoena the records of an investigative committee); *United States v. Winner*, 641 F.2d 825 (10th Cir. 1981) (involving a pending criminal case). DHS has cited no authority from any circuit supporting the application of the law enforcement privilege to civil proceedings and, in particular, has failed to justify the withholding of investigative files from parties who are

7

not the targets of the investigations detailed therein and who are, moreover, subject to a court-enforced protective order.

In this case, the undersigned concluded that the law enforcement privilege is inapplicable to this case and that, even were it applicable, the balance of interests mandates disclosure of all documents not subject to the attorney-client or informant's privilege or to the work product protection. The files sought here are the sole evidence supporting DHS's bond breach determinations, which are the subject of the underlying suit. As such, the files are inarguably relevant and necessary to Plaintiffs' case. More than this Plaintiffs cannot at present be required to show, since, as this Court has noted, "the pertinence of [requested] reports . . . cannot be demonstrated by one who does not have access to them." *Swanner*, 406 F.2d at 718.

The district court has already stated in no uncertain terms that documents identifying specific undercover agents or revealing similar information may be withheld, so long as the government details the reasons for their non-production with sufficient specificity to allow the court to ensure that the exception is not being abused. Together with the traditional privileges applicable in civil discovery, this latitude provides adequate assurance that the prosecution of this suit will not unduly burden the government or endanger national security. To move beyond these protections would be to grant the government *carte blanche* to avoid the most basic – and fundamental – obligations of a party to civil litigation.

## IV. Conclusion

For the aforementioned reasons, the undersigned respectfully requests that this Court deny the petition for a writ of mandamus and return the case to the district court for resolution.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via first-class mail, on this the ____ day of _____, 2006, upon the following:

| | |
|---|---|
| Adam Waskowski<br>Lord Bissell & Brook LLP<br>115 LaSalle Street<br>Chicago, IL 60603 | Joseph S. Grinstein<br>Susman Godfrey<br>1000 Louisiana St.<br>Houston, TX 77002-5096 |
| Nick J. DiGiovanni<br>Lord Bissell & Brook LLP<br>115 LaSalle Street<br>Chicago, IL 60603 | Steven T. Whitmer<br>Lord Bissell & Brook LLP<br>115 LaSalle Street<br>Chicago, IL 60603 |
| Alan N. Magenheim<br>Magenheim & Associates<br>3704 Travis St.<br>Houston, TX 77002 | Gerald Walter Guerinot<br>6309 Skyline Dr., Suite D<br>Houston, TX 77057 |
| Frances M. Toole<br>Department of Justice<br>P.O. Box 875<br>Washington, DC 20044 | Jeannine Renee Lesperance<br>Department of Justice<br>1100 L Street NW<br>Washington, DC 20005 |
| Jose Vela, Jr.<br>P.O. Box 61129<br>Houston, TX 77208 | |

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE