UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SAFETY NATIONAL CASUALTY CORPORATION and AAA BONDING AGENCY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | § § § § § § § § § § § § § § | CIVIL ACTION NO. H-05-cv-2159 |

## MEMORANDUM AND ORDER

Pending before the Court is the United States' Motion for Judgment (Doc. No. 128) and Plaintiffs' Motion to Strike. (Doc. No. 135.) After considering the relevant law and the arguments presented in briefing, the Court finds that the United States' Motion should be granted in part and Plaintiffs' Motion to strike should be denied.

### I. BACKGROUND

This lawsuit involves a dispute between Safety National Casualty Corporation ("Safety National"), a surety company authorized by the Department of Treasury to issue immigration delivery bonds, AAA Bonding Agency, Inc. ("AAA"), Safety National's authorized agent, and the Department of Homeland Security ("DHS"), regarding more than 1400 immigration bond breach determinations. An alien may use an immigration delivery bond to procure his release from the custody of DHS's Bureau of Immigration and Customs Enforcement (ICE) pending the outcome of deportation proceedings against him. An immigration delivery bond is a contract, akin to a bail bond, between Safety National—acting through its agent AAA—and DHS.

In 2005, the parties established an Agreed Framework for Alternative Dispute Resolution ("ADR"). Later, the parties agreed to a stipulated Joint Statement of Facts (JSOF) for 50 bond

1

breach determinations to be considered by the Court and compiled a Joint Appendix of the documents referenced in the JSOF. Plaintiffs identified 13 defenses they claimed were applicable to one or more of the 50 bonds and provided a list of those defenses to Defendants. In March 2008, the Court addressed the 50 bond breach determinations and Plaintiffs' defenses and remanded 15 bond determinations to the DHS. The United States now asks the Court to enter judgment on 14 of those remanded bonds. The United States contends that DHS complied with the procedures in the Court's March 2008 Order and, therefore, judgment should be entered against Safety National and AAA on the fourteen bonds for $95,000, plus penalties and interest.

The Court remanded 15 bonds because each was subject to one of two valid defenses: the "no-notice" defense and the "run letter" defense. The Court held the "no-notice" defense valid because the I-352 Bond Contract ("Bond Contract") between the parties allows the obligor and the agent to provide an address and to check one of the following boxes: "Address to use for notice purposes: [ ] Obligor [ ] Agent [ ] Both." The Court determined that "[n]otice of a demand to deliver the alien is a condition precedent to performance, and proper notice, as defined by the terms of the Bond Contract, entails sending the I-340 [Notice to Deliver Alien ('I-340 Notice')] to both addresses." (March 24, 2008 Mem. & Order, Doc. No. 113, at 28.) The Court also held that "[DHS] can only comply with its clearly expressed obligation to provide notice within 180 days by sending [the I-323 Notice of Breach ("I-323 Notice")] to both the obligor and the co-obligor if the 'both' box is checked." (*Id.* at 31.) The Court remanded 13 bonds based on the "no-notice" defense for failure to send either an I-340 Notice and/or an I-323 or both to both Safety National and AAA. (*Id.* at 51-52.) The Court also remanded JSOF 16, regarding Hernandez, Maria Nubia ("Bond 16") based on this defense: because there was no certified mail return receipt indicating delivery of the I-323 Notice to either Safety National or AAA, the Court held

2

that DHS' determination that Plaintiffs were given proper I-323 Notice for Bond 16 was arbitrary and capricious. (*Id.* at 55.)

As to the "run letter" defense, the Court determined that "the Bond Contract itself states unequivocally that no demand to produce an alien will be sent less than three days prior to sending [Form I-166 ('Run Letter')]. Under the clear language of the bond, where DHS fails to do so, it has not made a timely demand, and the bond has not been breached." (March 2008 Order, at 41.) The Court remanded one bond because DHS sent the Run Letter on the same date as the I-340 Notice.

On remand, DHS re-issued the I-340 Notice by certified mail to Safety National and AAA for each of the 14 bonds. DHS did not provide the Run Letter at the same time as the I-340 Notice. After DHS received certified mail receipts confirming delivery of the notices, and neither obligor delivered the alien on the surrender date, DHS sent the I-323 Notice to Safety National and AAA via regular mail. Once the time for filing an appeal expired, DHS issued invoices demanding payment for each of the breached bonds. Plaintiffs did not pay these invoices. Plaintiffs dispute that any amount is owed because they contend that the bonds' defects cannot now be cured. They ask that the Court grant them summary judgment on the 14 bonds. Plaintiffs also allege that AAA has no record of receiving these new I-323 Notices from DHS and that Defendants' records show that the I-340 Notice for one of the bonds was sent only to Safety National and not to AAA (Peixoto, Bond 38). The Court has jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 704, and 28 U.S.C. § 1345.

## II. STANDARD OF REVIEW

As before, the Court will review the disputed bond breach determinations under the arbitrary and capricious standard set forth in § 706 of the APA. 5 U.S.C. § 706(2)(A). The Court will limit its review to the administrative record, but finds that Plaintiffs did not waive arguments

they did not raise during their administrative appeals. The Court will apply arbitrary and capricious review to DHS's bond breach determinations. 5 U.S.C. § 706(2)(A) (a court "shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.") "[W]hile the arbitrary and capricious standard of review is highly deferential, it is by no means a rubber stamp." *Pension Benefit Guar. Corp. v. Wilson N. Jones Mem'l Hosp.*, 374 F.3d 362, 366 (5th Cir. 2004). Agency action is entitled to a presumption of regularity, but "that presumption is not to shield [its] action from a thorough, probing, in-depth review." *Overton Park*, 401 U.S. at 402. The Supreme Court further explained in *Overton Park*:

> [T]he court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of DHS.

401 U.S. at 416. The Court must therefore uphold DHS's decision if it "examine[d] the relevant data and articulate[d] a satisfactory explanation for its actions including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). The Court should not, however, "weigh the evidence in the record pro and con." *Harris v. United States*, 19 F.3d 1090, 1096 (5th Cir. 1994).

### III.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

4

party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Cross motions for summary judgment do not alter the basic Rule 56 standard; instead the Court must determine whether either of the parties deserves judgment.

## IV. PLAINTIFFS' MOTION TO STRIKE EXHIBITS TO DEFENDANTS' REPLY

Plaintiffs contend that three Declarations attached to DHS's reply must be stricken because they refer to documents that are not attached or are only partially attached. FED. R. CIV. P. 56(e) ("If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."). In addition, they argue that the doctrine of optional completeness requires either that DHS produce the papers in their entirety, or that the Court strike the offending declarations. Finally, Plaintiffs contend that DHS waived its privilege by selectively disclosing part of the documents at issue but refusing to disclose the rest of the document based on privilege. In the alternative, Plaintiffs request that the Court conduct an *in camera* review of the documents to determine whether they are protected by privilege.

Plaintiffs specifically take issue with the "Immigration Bond Policies and Procedures" memorandum ("Mead Memorandum") referred to in the declaration of Walter Leroy (Doc. No.

131, Ex. I to Leroy Decl.), the "ICE Bond Management Unit Training manual" ("training manual") referred to in the declaration of Shawn Mandel (Doc. No. 131, Mandel Decl), and the report Lori Genest generated ("Genest report") that purportedly shows that Safety National breached certain bonds during fiscal year 2008. (Doc. No. 131, Genest Decl.) DHS responds that the declarants testified with personal knowledge and that the documents need not be produced in their entirety.

As to the Genest report, the breach rate is not a material fact that is at issue in this Motion for Judgment. Therefore, the Genest Declaration will not be struck and Plaintiffs' objection is overruled as moot. *See Lawson v. American Motorists Ins. Corp.*, 217 F.2d 724, 726 n.3 (5th Cir. 1955). Likewise, as to the Mandel affidavit, Mandel testifies from personal knowledge as a Supervisory Detention and Deportation Officer and avers that DHS does not have a standard practice as to I-166 notices. The reference to the ICE Bond Management Unit manual supports this argument, but does not establish it. Moreover, DHS provided the portion of the manual that discusses Run Letters. Plaintiffs' objection as to this affidavit shall be overruled. Finally, as to the documents accompanying the Leroy Declaration, the Court is concerned that Mr. Leroy does not specifically aver that the Mead Memorandum conclusively establishes the relevant DHS policy during the period in question. Subsequent to the Motion to Strike, however, the United States filed a Declaration in which a government official who purports to have personal knowledge testifies as to the relevant DHS policy. Plaintiffs' Motion as to the Leroy Declaration will be overruled as moot.

## V. ANALYSIS OF THE 14 BONDS

Plaintiffs assert that a motion for judgment is premature and that DHS should have moved for summary judgment. Plaintiffs move for a summary judgment, arguing that they have articulated valid defenses to the 14 bonds. Plaintiffs contend that DHS wrongfully determined

6

that the 14 bonds were breached for five reasons: (1) DHS did not provide proper I-340 or I-323 Notice as required by the Court's March 2008 Order; (2) the original notice defects were not timely cured in accordance with the Bond Contract; (3) DHS' breach determinations violate the Court's ruling with respect to the Run Letter defense; (4) the new notices are untimely; and (5) DHS' breach determinations were not made by a district director, as required by 8 C.F.R. § 103.6(e).

### A. Applicable Law

The I-352 is a contract, and the instructions on the form have been "incorporated into the section of the regulations requiring its submission."[1] 8 C.F.R. § 103.2(a); 8 C.FR. § 299.1; *see also* I-352, General Terms and Conditions ("Federal law shall apply to the interpretation of the contract, and its terms shall be strictly construed."). The Court interprets contracts to give effective meaning to all terms, and assumes that no part of the agreement is superfluous. *See Medlin Const. Group, Ltd. v. Harvey*, 449 F.3d 1195, 1200 (Fed. Cir. 2006) ("The general rules of contract interpretation apply to contracts to which the government is a party. A reasonable interpretation must 'assure that no contract provision is made inconsistent, superfluous, or redundant.'" (internal citations omitted)); REST. (SECOND) OF CONTRACTS § 203(a), cmt. (b). Furthermore, "in choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds." REST. (SECOND) OF CONTRACTS § 206; *see also Grumman Data Systems Corp. v. Widnall*, 15 F.3d 1044, 1048 n. 4 (Fed. Cir. 1994) (noting

---

[1] The Board of Immigration Appeals itself has explained that delivery bonds "create a contract between the Service, the bonding agent and attorney-in-fact, and the surety company." *Matter of Allied Fidelity Insurance Company*, 19 I. & N. Dec. 124, 125 (BIA 1984). Defendants have not specifically argued in extensive briefing or at oral argument that its interpretation of the terms of the actual I-352 Bond Contract form is entitled to deference. At least one Circuit has found that no such deference is owed to an Agency's interpretation of a contract. *See Meadow Green-Wildcat Corp. v. Hathaway*, 936 F.2d 601, 604-05 (1st Cir. 1991) (finding that "neither the language nor the reasoning" of Supreme Court cases discussing deference to agency interpretations of statutes or of its own regulations "suggests they require similar deference to DHS's interpretation of a contract that it makes with an outside party.").

7

that the doctrine of contra proferentum "has been repeatedly applied in the field of government contracts.").

**B. Failure to Provide Proper I-340 or I-323 Notice**

1. *Requirement that I-323 Notice be Sent Via Certified Mail*

Plaintiffs contend that the I-323 Notice must be provided by certified mail rather than regular mail. The United States responds that the applicable regulation, 8 C.F.R. § 103.5a(c)(1), allows the bond breach notice to be sent via regular mail because the breach does not arise from a "proceeding" but rather from the obligors' failure to produce the alien upon demand. In addition, DHS recently interpreted the regulation to allow delivery by regular mail. ("Mead Memorandum", Doc. No. 131, Ex. I to Leroy Decl; Reeves Decl., Doc. No. 139.) The United States responds that the applicable regulation allows the DHS to send notice of breach by regular mail because a notice of a bond breach is not a "proceeding" and, moreover, the Court must give *Auer* deference to the DHS' interpretation of its own regulation that allows service by ordinary mail. Lastly, the United States contends that, if AAA did not receive the notices, these were Postal Service errors, and DHS complied with its regulations and the Court's orders by mailing the demand notices.

The Bond Contract specifies that "[t]he obligor and agent further agree that any notice to him/her in connection with this bond may be accomplished by mail, directed to him/her at the above address." (I-352, Immigration Bond.) Regulations define the authorized means of service for notice "in administrative proceedings before Service officers." 8 C.F.R. § 103.5a. Personal service, that allows service by certified mail, is required "[i]n any proceeding which is initiated by the Service, with proposed adverse effect, [and] service of the initiating notice and of notice of any decision by a Service officer shall be accomplished by personal service, except as provided in section 239 of the Act [defining notice for removal proceedings]." 8 C.F.R. §

103.5a(a)(2)(iv); 8 C.F.R. § 103.5a(c)(1). Routine service is permitted for other papers in the proceedings "initiated by the Service, with proposed adverse effect," (i.e. papers that are neither notices nor notices of a decision) and for papers in "other proceedings." 8 C.F.R. § 103.5a(a)(1). Routine service allows delivery by ordinary mail. *Id.*

The regulations do not explicitly define "proceeding ... initiated by the Service, with proposed adverse effect." The caselaw also does not provide much guidance. A Southern District of Texas case clarified that a subsequent proceeding on a petitioner's application for political asylum is not a new "proceeding initiated by the Service with proposed adverse effect." *Villegas v. O'Neill*, 626 F.Supp. 1241, 1244 (S.D. Tex. 1986).

Plaintiffs contend that the I-323 Notice is, by its own terms, a "decision" and thus requires personal service. The I-323 Notice explains that the recipient "[has] the right to appeal this decision .... [and] [i]f no appeal is filed within the time allowed this decision is final." (*See e.g.,* Doc. No. 128, Ex. 2, Gov Appx. 005). Plaintiffs' position has some support in *United States v. Minnesota Trust Co.*, which approved the use of personal service to provide notice to an obligor on immigration delivery bonds. *See United States v. Minnesota Trust Co.*, 59 F.3d 87, 89-91 (8th Cir. 1995) (holding that when DHS attempts to provide notice to the address on the I-352 form in conformance with 8 C.F.R. § 103.5a(a)(2), using certified mail, an immigration bond may be considered properly breached even if the notice is returned). In two decisions, DHS analyzed proper notice for I-340 Notices under 8 C.F.R. 103.5a(a)(2)(iv). *See In re Obligor*, 2003 WL 21000163 (INS Office of Admin. Appeals Feb. 11, 2003) ("The record fails to contain the domestic return receipt to indicate that the Notice to Deliver Alien was sent to the obligor... or to indicate that the obligor had received the notice to produce the bonded alien .... Consequently, the record fails to establish that the district director properly served notice on the obligor in compliance with 8 C.F.R. 103.5a(a)(2)(iv)."); *In re Obligor*, 2001 WL 34078453

(Office of Admin. Appeals Mar. 13, 2001) (same). DHS's Adjudicator's Field Manual also requires that such a return receipt be included in the administrative record on appeal. (Gov. Appx. 058.) It is unclear why personal service is not required for I-323 Notices if it is required for I-340 Notices.

The United States contends that a bond breach determination is not a "proceeding," and, therefore, I-323 Notices do not require personal service because a bond breach determination does not involve a hearing before an immigration official or a formal presentation of evidence. In addition, it notes that, in April 2008, the Acting Director of the Office of Detention and Removal Operations issued the Mead Memorandum that clarified that I-323 Notices "shall be served on the obligor via regular mail...." (Doc. No. 131, Ex. I to Leroy Decl.) The United States asserts that the Acting Director's interpretation must be afforded *Auer* deference, i.e. DHS's interpretation is afforded deference unless its interpretation is plainly erroneous or inconsistent with the regulation. *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (deferring to the interpretation advanced in the Secretary's amicus brief); *Belt v. EmCare, Inc.*, 444 F.3d 403, 408 (5th Cir. 2006) (deferring to a Department of Labor Handbook, amicus brief, and opinion letter). The Mead Memorandum explicitly supersedes all previous INS and DHS bond policies and procedures except for those in memoranda referred to in the Mead Memorandum. (Doc. No. 131, Ex. I to Leroy Decl.) Defendants provided a severely redacted copy of the Mead Memorandum, however, and it is unclear which memoranda remain in force. (*Id.*) On the Court's request, the DHS submitted a sworn Declaration of Pamela Reeves, a Supervisory Detention and Deportation Officer employed by the Office of Detention and Removal Operations, U.S. Immigration and Customs Enforcement. (Reeves Decl., May 7, 2009, Doc. No. 139.) Ms. Reeves testifies via Declaration that the current policy of ICE is to mail the I-323 Notice to the obligor by regular

mail and that this policy was in effect when the I-323 Notices were sent during the re-breach procedures for the 14 bonds at issue. (*Id.*)

The above-cited caselaw does not require the Court to find that certified mail is required—even if DHS's interpretation has fluctuated, it is still afforded deference. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, --- U.S. ---, 129 S.Ct. 865, 872 n. 7 (2009). The Court has no reason to believe that the Mead Memorandum is not agency policy and the Memorandum does not provide a plainly erroneous interpretation of the regulation when the term "proceeding" is not clearly defined and may reasonably exclude a bond breach determination. Because the Court finds the regulation ambiguous, it will defer to DHS's interpretation, and conclude that service by regular mail is appropriate for the I-323 Notice.

### 2. *Plaintiffs' Receipt of the Notices*

In addition to their quarrel with the use of regular mail, Plaintiffs contend that DHS did not provide proper notice because AAA has no record of receiving the I-323 notices for the 14 bonds. In addition, Plaintiffs assert that, because both of the I-340 Notice for Bond 38 were sent to Safety National, DHS did not provide proper notice.

DHS's duty to provide notice, however, does not require proof that the recipient received the notice. As the Second Circuit has explained, under 8 C.F.R. § 103.5a, if DHS sends the notice to the address furnished to DHS, that constitutes proper service. *Howell v. INS*, 72 F.3d 288, 290 (2d Cir. 1995).[2] Here, a contractor who works for DHS testified via Declaration that she mailed the I-323 Notices to both Safety National and AAA. (Decl. Virginia Pointer, Doc. No. 128, Tab 1.) Although Plaintiffs contend that the I-340 Bond Notices for Bond 38 both arrived at

---

[2] The Court notes that, in the context of notice of a removal proceeding, specifically exempted from the regulation cited above, the Fourth Circuit clarified that the presumption of delivery for regular mail is less than that for certified mail and may be rebutted with evidence of non-delivery. *Nibagwire v. Gonzales*, 450 F.3d 153, 157-58 (4th Cir. 2006) (vacating the Bureau of Immigration Appeal's order and remanding for further consideration of proof of notice).

11

Safety National rather than one at AAA, the Certified Mail receipts indicate that one of the I-340 Notices was addressed to AAA in Houston and one to Safety National in St. Louis, Missouri. (Doc. No. 128, Tab 7.) These Notices, therefore, were properly served. Plaintiffs' arguments to the contrary are unavailing.

### C. Whether the Notice Defects Were Timely Cured

Plaintiffs argue that the Bond Contract does not allow re-breaching of the bonds because it requires that DHS send notice within 180 days of the date when the alien does not appear for surrender as stated in the I-340 Notice. Plaintiffs contend that if the original I-323 Notice is sent more than 180 days after breach, the bond remains in full force and cannot be cured by another I-323 Notice. The Bond Contract specifies that the date of breach is "the surrender date specified in the demand." (I-352, General Terms and Conditions.) Plaintiffs contend that any other notice defect is not curable under the Bond Contract terms.[3] Consequently, Plaintiffs argue that the 14 bonds are unenforceable because they suffer from I-340 Notice defects. The United States responds that the Bond Contract allows the DHS to issue more than one I-340 Notice and to re-breach the bond. It contends that, had the Court held that no new I-340 Notices could be issued, the Court would have cancelled the bonds rather than remanding them to DHS.[4]

The Bond Contract clarifies that failure to send the I-323 form within 180 days:

> shall have not [sic] effect on the status of the bond; i.e., the bond shall remain in full force until and unless properly canceled. In the case of a delivery bond, INS may, unless otherwise precluded by law, send a new timely demand to produce the alien and then breach the bond again if the obligor fails to produce the alien.

---

[3] Plaintiffs contend that DHS could issue multiple I-340 Notices, but could not follow up these notices with a second breach determination, unless the problem was a tardy I-323 Notice. (Doc. No. 130, Pl. Resp., at 10 n. 3.)

[4] It is not clear that the Court believed it had the authority to cancel the bonds: it noted "although parties have submitted extensive extra-record documentation and briefing on the factual issues surrounding notice for these bonds, the Court does not believe it should decide these issues. 'When an administrative agency has made an error of law, the duty of the Court is to "correct the error of law committed by that body, and, after doing so to remand the case to the (agency) so as to afford it the opportunity of examining the evidence and finding the facts as required by law."' *NLRB v. Enterprise Ass'n of Steam, Hot Water, Hydraulic*, 429 U.S. 507, 522 n. 9 (1977) (citing *ICC v. Clyde S.S. Co.*, 181 U.S. 29 (1901); *see also Pennzoil Co. v. FERC* 789 F.2d 1128, 1136 n. 21 (5th Cir. 1986)." (March 2008 Order, at 52.)

12

(I-352, General Terms and Conditions.) As the Court held in its March 2008 Order, "the express language of the Bond Contract makes clear that a bond is breached only if Defendants make a timely demand to produce the alien." (March 2008 Order, at 26.) Consequently, because the Court determined that the remanded bond were not properly breached because the DHS failed to notify both Safety National and AAA, DHS is able now to send a new timely demand to produce the alien and to breach the bond if the obligor fails to produce the alien.

### D. Run Letter Defense Bonds

Plaintiffs contend that, for five bonds, Run Letters were sent to the bonded aliens years before DHS issued the I-340 Notice. Consequently, they aver that DHS improperly determined that Bonds 13, 15, 43, 44, and 47 were breached. Plaintiffs argue that the Court should grant summary judgment for Plaintiffs as to these five bonds. As to the other 9 bonds, Plaintiffs insist that DHS did not properly consider whether and when a Run Letter was issued to the aliens at issue and that it simply issued new I-340 Notices. They contend that, because there is a factual dispute as to whether Run Letters were issued to the other 9 aliens, the Court should deny the United States' Motion as to these bonds.

The United States responds that the Court held that sending a Run Letter prematurely is a failure to send a timely demand, precluding a bond breach, but is not a failure that cancels the bond. It contends, as the Court noted in its March 2008 Order, the only conditions that automatically cancel a bond include the list that begins with "INS taking the alien back into its custody …." and sending a premature Run Letter is not one of those conditions, therefore, the United States reasons, the bonds are not cancelled. (I-352, General Terms and Conditions.) Further, the United States contends that there is no standard practice with respect to mailing Run Letters and Plaintiffs' caselaw does not establish a practice of sending Run Letters.

13

A bond is not breached unless DHS sends an I-340 Notice at least three days prior to sending the Run Letter. (March 2008 Order, at 41.) Once a Run Letter is sent, the bell is rung, and unless DHS sent the I-340 Notice at least three days before that, the bond will forever remain unbreached. The Court clarifies that this is a defect that can never be corrected. The bonds for which a Run Letter was sent fewer than three days after any I-340 Notice will again be remanded to DHS for further consideration not inconsistent with this order.

As to the nine bonds for which neither party has any evidence that a Run Letter was sent, the Court now holds that DHS's decision to reissue I-340 Notices and I-323 Notices was not arbitrary and capricious given that there is no record of the existence of a Run Letter in any of the bond breach determination files and no evidence that a Run Letter was issued.[5] Plaintiffs' cited caselaw does not create a material fact issue that DHS has a custom of sending Run Letters with all I-340 Notices. If Plaintiffs can produce a Run Letter for any of these bonds within the next month, the Court would be willing to reconsider this holding.

### E. Whether the New Notices Are Untimely

Plaintiffs contend that: (1) DHS failed to effect removal of the alien and to meet conditions precedent of the bond, (2) post-removal period detention authority is not indefinite; and (3) post-removal period detention authority is not automatic, but requires affirmative steps by the DHS. Plaintiff cites *Tran v. Mukasey* for the proposition that DHS failed to meet its duty to effect removal within the 90-day period following the order of removal and, therefore, DHS has failed to meet its obligations established by the Bond Contract and Plaintiffs need not perform on these bonds. The United States responds that Plaintiffs confuse the rules governing a pre-removal delivery bond and the rules governing post-removal detention of the alien.

---

[5] The Agency's own Field Manual indicates that the Record of Proceeding for Bond Breach Cases should contain a copy of the Form I-166. (Jt. Appx. 058). The Agency is admonished to investigate more thoroughly whether Run Letters have been issued for the other 14 bonds at issue given that it did not uncover the 5 undisputed Run Letters uncovered by Plaintiffs.

14

The Court agrees with the United States' contention here. In its March 2008 Order, the Court distinguished the length of DHS's detention authority from its ability to supervise or demand delivery of an alien after the 90-day detention period has expired and noted that the Agency may have detention authority beyond the 90-day removal period. (March 2008 Order, at 32-33.) Likewise, *Tran v. Mukasey* discusses the authority to detain an alien for more than six months. 515 F.3d 478 (5th Cir. 2008). Consequently, DHS's detention authority is not co-terminus with its ability to demand delivery of the alien, and the 14 remanded bonds need not be cancelled because the demand was made more than 90 days (or six months) after a final removal order.

### F. Bond Breaches Not Made by a District Director

Plaintiffs assert that the bond breaches are improper because DHS regulations require all bond breach determinations to be made by a District Director. 8 C.F.R. § 103.6(e). Plaintiffs contend that the I-323 Notices were signed by a former government employee and the I-323 were sent out by a government contractor. The United States responds that DHS properly delegated its authority to sign the bond breach notices to those who signed them. In addition, it claims that Mr. Trotter, the person who signed the notice of breach, is currently employed by DHS. The United States does not directly respond to the argument that the I-323 notices were improper because they were sent out by a government contractor.

The Secretary of Homeland Security has a broad delegation of authority, including the authority to redelegate authority by memorandum or any means deemed appropriate. 8 U.S.C. § 1103(a)(4); 8 C.F.R. §2.1. Mr. Trotter testifies via Affidavit that he is a Deportation Officer in the Kansas City, Missouri sub-office. The United States submits two memoranda that delegate the authority to breach bonds from the director of the Office of Detention and Removal to Supervisory District Detention and Deportation Officers like Mr. Trotter. (Doc. No. 131, Ex. 5.)

Plaintiffs cite caselaw for the proposition that delegations outside of an agency's statutory authority are invalid; delegations within that authority, as here, are valid. *Cf. Haitian Centers Council, Inc. v. Sale*, 823 F.Supp. 1028, 1046 (E.D.N.Y. 1993). The Court finds Plaintiffs' arguments unavailing.

## VIII. CONCLUSION

For the reasons set forth above, Plaintiffs' Cross-Motion for Summary Judgment is **GRANTED** as to bonds 13 (Jimenez-Gutierrez), 15 (Rangel-Quintanilla), 43 (Guzman-Serrano), 44 (Arbustine-Diaz), and 47 (Cedillo-Ramos). DHS's bond breach determinations as to these bonds are **VACATED** and the bonds are **REMANDED** to DHS for further consideration not inconsistent with this opinion. Defendant's Motion for Judgment is **GRANTED** as to the remaining of the 14 remanded bonds: 12 (Martinez-Linares); 16 (Hernandez); 17 (Flores-Garcia); 37 (Osorto-Espinal); 38 (Peixoto); 39 (Alvarenga-Carranza); 40 (Hernandez-Mejia), 41 (Chavarria-Romero), and 42 (Baez). As determined by DHS, these bonds are now due and owing unless Plaintiffs produce Run Letters for these aliens, suggesting that the Agency failed properly to investigate the relevant facts surrounding the bond breach determinations, within 30 days of the entry of this Order.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 11th day of May, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.