UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAFETY NATIONAL CASUALTY | § | |
| CORPORATION and | § | |
| AAA BONDING AGENCY, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-05-cv-2159 |
| v. | § | |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HOMELAND SECURITY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM AND ORDER</u>

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction (Doc. No. 183). After considering the Motion, all responses and replies thereto, oral argument, and the applicable law, the Court holds that it must be denied.

I.      BACKGROUND

This lawsuit involves a dispute regarding more than 1400 immigration bond breach determinations. The parties are various United States government entities, primarily the Department of Homeland Security ("DHS"), on one hand, and, on the other, Safety National Casualty Corporation ("Safety National"), a surety company authorized by the Department of Treasury to issue immigration delivery bonds, and AAA Bonding Agency, Inc. ("AAA"), Safety National's authorized agent. An alien may use an immigration delivery bond to procure his release from the custody of DHS's Bureau of Immigration and Customs Enforcement ("ICE") pending the outcome of deportation proceedings against him.  An immigration delivery bond is a

contract, akin to a bail bond, between Safety National—acting through its agent AAA—and DHS.

Plaintiffs filed this action in June 2005 to challenge DHS's determination that a large number of bonds had been breached. Defendants then filed a counterclaim, demanding payment on 1,421 bonds (the "Original Bond Group"). In September 2005, the parties established an Agreed Framework for Alternative Dispute Resolution ("ADR"). Later, the parties agreed to a stipulated Joint Statement of Facts ("JSOF") for 50 bond breach determinations to be considered by the Court. The Court's rulings on the 50 bond breaches were intended to guide the parties toward resolution of the remaining bond breach determinations in the Original Bond Group. Plaintiffs identified 13 defenses they claimed were applicable to one or more of the 50 bonds and provided a list of those defenses to Defendants. In March 2008, the Court addressed the 50 bond breach determinations and Plaintiffs' defenses (March 24, 2008 Mem. & Order ("March 2008 Order"), Doc. No. 113.) The Court rejected some of Plaintiffs' defenses as invalid, accepted others as valid, and remanded the 15 bond breach determinations with potentially valid defenses to DHS for further fact-finding and proceedings consistent with its order. Additional detail as to this Court's finding with respect to each of the 50 presented bonds can be found in this order.

Subsequently, the Government sought judgment under the ADR framework on 14 of the bonds remanded pursuant to the March 2008 Order. Plaintiffs moved for summary judgment on the same bonds, arguing that they had articulated valid defenses to DHS's breach determinations. The Court granted Defendants' Motion for Judgment as to 9 bonds, holding that these bonds were "due and owing unless Plaintiffs produce Run Letters for these aliens . . . within 30 days of entry of this Order." (May 11, 2009 Mem. & Order ("May 2009 Order"), Doc. No. 140 at 16.). The Court remanded 5 bonds to DHS for further consideration not inconsistent with its order.

After the March 2008 Order and May 2009 Order, the parties attempted to mediate their disputes by applying the Court's rulings to 241 additional bonds that the parties selected as a representative sample of the more than 2,400 bonds that remain in dispute.[1] The parties were not, however, able to reach a final settlement through mediation due to continuing disagreements as to specific issues presented through the disputed bonds.

The parties subsequently submitted cross-motions for judgment under the ADR framework on 9 new bonds within the Original Bond Group. In their motions, the parties requested the Court's ruling regarding three issues related to the defenses already deemed valid in prior Court orders. The Court granted judgment to DHS in part and granted judgment to Plaintiffs in part. (May 28, 2010 Mem. & Order ("May 2010 Order"), Doc. No. 159.) Additionally, the Court declined to decide the validity of a defense that was inapplicable to any of the bonds contained within the Original Bond Group, but that Plaintiffs claimed was applicable to a bond breach determination outside of the Original Bond Group. The Court's holding on this issue rested on the fact that the bond at issue was breached in November 2007— long after the initiation of the present litigation. The Government and Plaintiffs have appealed the Court's final judgment as to the bonds addressed in these orders.

In the interim, the Government has filed suit against Plaintiffs in the Western District of Texas, the Southern District of Florida, and the Eastern District of Missouri to recover on additional bond breach determinations (the "Subsequently-Filed Cases"). In each of the Subsequently-Filed Cases, the Government seeks judgment on a small handful of disputed bonds and seeks recovery of relatively small sums of money. None of the bonds at issue in the Subsequently-Filed Cases is part of the Original Bond Group that is the subject of litigation in

---

[1] The group of 2,400 bonds referenced here include not only the 1,421 bonds that comprise the Original Bond Group that is the subject of this litigation, but also additional bonds underwritten by Plaintiffs that DHS asserts have been breached.

this Court. On September 24, 2010, the Western District of Texas applied the first-to-file rule and granted Plaintiffs' motion to transfer the case to our Court. In contrast, the Southern District of Florida has denied Plaintiffs' motion to transfer.[2] Plaintiffs have filed for injunctive relief that would restrain DHS from filing suit on bond breach determinations in courts other than this one. Oral argument regarding Plaintiffs' motion was held on November 30, 2010. The motion has been fully briefed and is ripe for disposition.

## II.   DISCUSSION

Plaintiffs argue that the Government should be restrained from filing suit over bond breach determinations that raise issues identical to the ones presented to and adjudicated by this Court in its prior orders. The bond breach determinations are at issue in the Subsequently-Filed Cases are, according to Plaintiffs, ones for which Plaintiff would not owe any money under the Court's prior rulings. Plaintiffs characterize the Government's behavior as "forum-shopping" in order to avoid the Court's prior rulings and obtain a more favorable outcome in another court. Plaintiffs contend that the Court has inherent power to issue a preliminary injunction in order to avoid duplicative litigation and to curtail improper forum shopping.

DHS argues that there is no statutory source of jurisdiction or an express waiver of sovereign immunity authorizing the injunctive relief requested. In addition, DHS claims that the injunctive relief requested is overbroad. DHS also contends that Plaintiffs have not met the standards for a preliminary injunction—either under the traditional four-factor test or an alternative preliminary injunction standard.

---

[2] In the order denying the motion to change venue, the Honorable Judge Patricia Seitz noted that venue was proper in the Southern District of Florida. Judge Seitz acknowledged that, though there are "general issues of law in common" between the case in this Court and the case pending before her, "the specific facts involved with each bond breach are individualized." *See United States of America v. Safety National Casualty Corp., et al.*, Case No. 10-22499-CIV, Order Denying Mtn. to Transfer, Mtn. to Dismiss, Mtn for Summary Judgment and Setting Deadlines at 2 (Dec. 3, 2010). In order to provide consistency between the cases, Judge Seitz "will follow any applicable legal decisions made" by this Court. *Id.*

The parties' arguments can be organized around three distinct sources of judicial authority to grant the injunctive relief requested here: (a) the first-to-file rule; (b) Federal Rule of Civil Procedure 13(a); and (c) equitable powers to restrain vexatious litigants. Each of these issues will be addressed in turn, below.

### A. First-to-File Rule

1. Legal Standard

The Supreme Court and the Fifth Circuit have recognized that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976) ("[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts."); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985). "The 'first-to-file' rule is grounded in principles of comity and sound judicial administration." *Save Power v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The principle of comity requires federal district courts to exercise care to avoid interference with each other's affairs. *Id.* The concern behind the comity principle is to (a) avoid the waste of duplication, (b) avoid rulings that may trench upon the authority of sister courts, and (c) avoid piecemeal resolution of issues that call for a uniform result. *West Gulf Maritime Ass'n.*, 751 F.2d at 729. To accommodate this principle, a district court may dismiss, transfer, or stay an action where the issues presented can be resolved in an earlier-filed action pending in another district court. *Id.* In addition, a district court with the first-filed case may enjoin the filing of related lawsuits in other courts. *See Schauss v. Metals Depository Corp.*, 757 F.2d 649 (5th Cir. 1985); *Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338 (5th Cir. 1986).

5

In order for the first-to-file rule to apply, the litigation in the first-filed action must be "substantially similar" to the issues presented in the subsequently-filed actions. The Fifth Circuit requires only "substantial overlap" between the suits instead of demanding that the issues presented in the two separate actions be identical. *West Gulf Maritime Ass'n.*, 751 F.2d at 730; *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d at 950. In contrast, at least one other circuit requires that the issues presented in both cases be almost identical: "The lawsuits must be materially on all fours with the other . . . The issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). In the Fifth Circuit, "[w]here the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus.*, 91 F.3d 1, 4 (1st Cir. 1996)).

Once a "substantial overlap" has been established, courts have not imposed the traditional four-factor standard when deciding whether a preliminary injunction should issue. *See West Gulf Maritime Ass'n.*, 751 F.2d at 728-29 (issuing a preliminary injunction where it was warranted "to avoid waste, to avoid making rulings which trench on the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result"); *Superior Savings Assoc. v. Bank of Dallas*, 705 F. Supp. 326, 328 (N.D. Tex. 1989) (stating that the four-factor standard was of "secondary significance," and instead applying a test that considered the "convenience of the parties and the courts").

  2.  Analysis

6

Plaintiffs argue that the Subsequently-Filed Cases substantially overlap with the case in this Court because the bonds in all cases raise the same issues and are all inscribed using identical Forms I-352. In addition, Plaintiffs believe that an injunction would serve the convenience of the parties and the courts because other courts have less familiarity with the complex factual and legal issues presented.

The Government does not address whether the cases substantially overlap because it has misconstrued the legal standard applicable under the first-to-file rule. The Government argues that federal district courts possess a limited power to enjoin duplicative litigation "arising out of the same transaction or occurrence." (Opp. to Mtn. for Prelim. Injunction at 9.) However, the "same transaction or occurrence" analysis is one mandated by Rule 13(a) and not the first-to-file rule.[3] As a result, the Government concentrates on arguing that the bonds in the Subsequently-Filed Cases do not represent compulsory counterclaims in the present case, and does not address whether the issues presented among the cases possess "substantial overlap."

In order to analyze whether there is a "substantial overlap," it is important to recognize the distinction between the individual nature of the bonds themselves and the commonality of the issues they present. An immigration delivery bond is a contract and is reflected on Form I-352, which outlines the terms and conditions relating to non-citizen's release from custody and the circumstances under which DHS will deem the bond to have been breached. 8 C.F.R. § 103.6(a); 8 C.F.R. § 299.1. Each Form I-352 relates to a single individual and is considered a separate contract between Plaintiffs and the Government.

Even though each immigration bond is a separate contract, common legal issues have arisen among the immigration bonds that comprise the Original Bond Group. Plaintiffs have

---

[3] The Government's arguments regarding the propriety of an injunction pursuant to Rule 13(a) will be addressed in the following section.

7

asserted several valid defenses that are applicable to more than one bond in the Original Bond

Group. (March 2008 Order at 50-58.) For example, the fact that DHS used the same Form I-352

for all immigration bonds, though each one is a separate contract, allows Plaintiffs to assert that

DHS's failure to follow certain instructions on the Form I-352 may be a valid defense to more

than one bond. One such valid defense is that the Government failed to send a Form I-340,

Notice to Deliver Alien, to both the obligor (Safety National) and the agent (AAA) when the

agent provided an address on the Form I-352 and checked the box indicating that the address for

both the obligor and agent were to be used for notice purposes. (March 2008 Order at 26-30.)

The recurrence of the same legal issues—i.e., the validity of asserted defenses—among all of the

bonds in the Original Bond Group is what justifies the application of the Court's prior orders to

the other immigration bonds despite each bond's character as a separate contract.

 The Court is now presented with the possibility that the bonds at issue in the

Subsequently-Filed Cases share common legal issues, including valid and invalid defenses, with

the bonds at issue in the Original Bond Group.[4] In such a scenario, there would be overlap

between the issues to be addressed in the various cases.

 However, there are areas of divergence that lead the Court to conclude that the overlap is

less than "substantial." First, the bonds at issue in the Subsequently-Filed Cases may present new

legal issues (specifically, new defenses) that are inapplicable to, and do not substantially overlap

with, the bonds in the Original Bond Group.[5] With respect to the latter situation, the Court has

declined in a prior order to address a legal issue that related only to a bond breach determination

---

[4] The Honorable Judge Orlando Garcia recognized the similarity in legal issues when transferring the case in the Western District of Texas to this Court: "[A]lthough each breach determination represents an independent claim, DHS has failed to show that the issues involving the 10 bonds breaches in this case are any different than the '10 or 20 separate issues that are raised over and over' in the breach determinations being considered by Judge Ellison." *United States of America v. Safety National Casualty Corp., et al.*, Case No. SA-10-CA-498-OG, Order Transferring Venue at 3 (Sept. 24, 2010).

[5] Plaintiffs acknowledge that "it is unclear whether Plaintiffs have additional defenses that apply" to some of the bonds at issue in the Subsequently-Filed Cases. (Pl. Mtn. for Prelim. Injunction at 5 n.3.)

that was not part of the Original Bond Group.[6] (May 2010 Order at 20-22.) Second, each bond

breach determination presents distinct factual inquiries. Each bond has been deemed breached

independent of other bonds and as a result of the circumstances arising in each non-citizen's

case. The examination of whether Plaintiffs surrendered a particular non-citizen to ICE by the

delivery date, whether a non-citizen departed voluntarily, whether proof of voluntary departure

exists, or whether Safety National and/or AAA received proper notice for a particular individual

are all independent factual inquiries. Thus, the bond breach determinations in the Subsequently-

Filed Cases, while sharing common defenses with the bond breach determinations in the Original

Bond Group, may pose unique defenses not applicable to the Original Bond Group. The bond

breach determinations in the Subsequently-Filed Cases most certainly will require an

independent factual inquiry and an individual application of valid defenses to the facts presented.

Plaintiffs have not established "substantial overlap" that justifies the Court's power to issue

injunctive relief under the first-to-file rule.

### B. Federal Rule of Civil Procedure 13(a)

1. <u>Legal Standard</u>

Federal Rule of Civil Procedure 13(a) requires that a pleading "state as a counterclaim

any claim that—at the time of its service—the pleader has against an opposing party if the claim:

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's

claim." Fed. R. Civ. P. 13(a)(1)(A). Rule 13(a) has been invoked as support for the principle that

"when a case is brought in one federal district court, and the case so brought embraces

essentially the same transactions as those in a case pending in another federal district court, the

---

[6] The Court did not make a finding of whether bonds outside of the Original Bond Group constituted the same "transaction or occurrence" as bonds within the Original Bond Group. (May 2010 Order at 21.) Instead, the Court held that it did not possess jurisdiction over bonds over which disputes arose only after the Complaint and counterclaims were filed. (*Id.*)

latter court may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case." *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961); *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620 (D.C. Cir. 1975).

     2.  <u>Analysis</u>

     The Government argues that injunctive relief is improper when the claims in the Subsequently-Filed Cases would not be considered compulsory counterclaims in the current litigation. Specifically, the Government argues that each immigration bond represents a separate contract and thus the Government was not required to assert all bond breach determinations as counterclaims in this litigation.

     It is clear that Rule 13(a) would require restraint only on the prosecution of counterclaims that existed at the time the Government filed its counterclaim to Plaintiffs' complaint in September 2005. Here, however, the bond breach determinations that are the subject of the Subsequently-Filed Cases were not claims that the Government could have brought *at the time* of its' counterclaim in September 2005. The bonds that are the subject of litigation in the Subsequently-Filed Cases are ones that were breached before September 2005, but not invoiced by that date because they were the subject of pending appeals with DHS. (Def. Opp. to Mtn. for Prelim. Injunction at 2-4.) Since only "a <u>final</u> determination that a bond has been breached creates a claim in favor the United States," 8 C.F.R. § 103.6(e), in September 2005, the Government did not possess claims in its favor that could be filed as counterclaims in the present litigation. Without ruling on whether each bond represents a separate transaction or occurrence, the Court holds that Rule 13(a) does not support the exercise of the Court's injunctive power because the bond breach determinations that are the subject of the Subsequently-Filed Cases did not exist as claims at the time of the Government's pleading in September 2005.

### C. Equitable Doctrine regarding Vexatious Litigation

#### 1. Legal Standard

The Fifth Circuit has recognized that federal courts have "the power to enjoin plaintiffs who abuse the court system and harass their opponents," as part of the courts' "broad powers to protect their judgments and the integrity of the courts as a whole." *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1499 (5th Cir. 1993). In *Villar*, the plaintiffs' prior federal and state case in California had been dismissed on *forum non conveniens* grounds, with the federal district court going as far as to say that there could be no forum in the United States where plaintiffs could sue. The plaintiffs waited ten years and then filed again in Texas state court with the same facts and cause of action. After removal, the federal district court, in addition to granting the defendant's motion to dismiss, enjoined the plaintiffs from filing any action in state or federal court in the United States. *Id.* at 1493. The Fifth Circuit affirmed, holding that federal courts possess the power to enjoin vexatious litigants from filing suits. *Id.* at 1499.

#### 2. Analysis

Plaintiffs argue that an injunction is necessary to prevent the Government from improperly shopping for new forums around the country. Plaintiffs characterize the Subsequently-Filed Cases, which purportedly raise the same legal issues as the ones already addressed by this Court, as an effort to seek decisions that conflict with the Court's prior rulings. Plaintiffs believe that the cost of prosecuting each action will outweigh the potential recovery in each suit, thus diminishing the Government's claim that it is only attempting to recover money it is owed. Finally, Plaintiffs believe that a tolling agreement would have addressed the Government's concerns over the statute of limitations.

The Government, in opposition, argues that it was forced to file suit in order to avoid an impending statute of limitations from expiring for the bond breach determinations at issue in the Subsequently-Filed Cases. It claims that it is not seeking more advantageous rulings, as evidenced by the fact that the bond breach determinations at issue in the Subsequently-Filed Cases implicate defenses for which the Court already has ruled in favor of the Government.

The Government is within its rights to sue over the bond breach determinations at issue in the Subsequently-Filed Cases. Each bond is a separate contract, and the breach of each gives rise to an independent claim in the Government's favor. Though the Government may be attempting to seek more favorable rulings in other courts, its attempts focus on bonds outside of the Original Bond Group. The Government is not attempting to relitigate bond breaches that have been decided against them by this Court. The Court holds that the Government does not fit the profile of a vexatious litigant who is forum shopping for different relief regarding the same bond contracts.  Thus, injunctive relief on the basis of forum shopping or a vexatious litigant is improper.

## III.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Preliminary Injunction (Doc. No. 183) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 23rd day of December, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE