## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SAFETY NATIONAL CASUALTY** | § | |
| **CORPORATION and** | § | |
| **AAA BONDING AGENCY, INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 05-cv-2159** |
| **v.** | § | |
| | § | |
| **UNITED STATES DEPARTMENT OF** | § | |
| **HOMELAND SECURITY,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

The following motions are now pending before the Court: (1) a Motion for Final Judgment on Six Bonds, filed by Defendants against Plaintiff AAA Bonding Agency, Inc. ("AAA"); (2) a Motion for Final Judgment on Six Bonds, filed by Plaintiff Safety National Casualty Corporation ("Safety National" or "Safety"); (3) a Cross-Motion for Final Judgment on Six Bonds, filed by Defendants against Safety National; and (4) a Motion for Scheduling Conference filed by AAA. After considering these motions, all responses thereto, and the applicable law, the Court finds that Defendants' Motion for Final Judgment against AAA must be GRANTED; Safety's Motion for Final Judgment must be GRANTED; Defendants' Motion for Final Judgment against Safety must be DENIED; AAA's Motion for Scheduling Conference must be DENIED.

### I.    BACKGROUND

This lawsuit involves a dispute between Safety National, a surety company authorized by the Department of Treasury to issue immigration delivery bonds, AAA, Safety's authorized agent, and the Department of Homeland Security ("DHS"), regarding more than 1400 immigration bond breach determinations. This dispute has spanned many years, and the Court has, on three prior occasions, detailed the procedural and factual background of the case. (Doc. Nos. 113, 140, 159.)

Plaintiffs' claims stem from a number of bail bond contracts between Plaintiffs and DHS for the purpose of procuring the release of undocumented immigrants ("aliens")[1] from DHS custody by guaranteeing their appearance at the termination of immigration proceedings. In June 2005, Plaintiffs filed this action to challenge DHS's determination that a large number of those bonds had been breached. The breach determination was made by DHS as well as the Administrative Appeals Office ("AAO"), which reviews DHS's bond breach determinations. DHS filed a counterclaim in September 2005, demanding payment on 1,421 bonds. The parties agreed to an ADR framework under which they submitted a representative group of fifty of the 1,421 bonds for this Court's review.

### A. Decisions in this Court

On March 24, 2008, the Court issued an order in which it resolved cross motions for summary judgment on the fifty sample bonds (the "2008 Order"). (Doc. No. 113.) After reviewing Plaintiffs' defenses, the Court rejected some as invalid, accepted others as valid, and decided a number of other issues. Ultimately, the Court granted summary judgment to DHS on twenty-three bonds, summary judgment to Plaintiffs on eighteen

---

[1] The term "alien" has been used by both parties throughout this case to refer to undocumented persons; the Court adopts the term for the sake of clarity.

bonds, and summary judgment to neither party on nine bonds. As to fifteen other bonds, the Court vacated the agency's breach determination and remanded for reconsideration.

In 2009, the Court reheard argument on fourteen of the fifteen bonds remanded in the 2008 Order. On May 11, 2009, the Court granted summary judgment to DHS on nine bonds and summary judgment to Plaintiffs on five bonds (the "2009 Order"). (Doc. No. 140.) In 2010, the Court reviewed nine new bond breaches submitted by the parties (none of which overlapped with the fifty which the Court had previously reviewed), and addressed new defenses raised by Plaintiffs. In a May 28, 2010 Order (the "2010 Order"), the Court remanded four bonds to DHS, and ordered payment on two other bonds. (Doc. No. 159.) The Court issued final judgments with respect to these three orders, and the parties cross-appealed them to the Fifth Circuit.

### B.  Issues Decided on Appeal

Both parties raised a number of issues on appeal. Although only a subset of the issues raised and decided on appeal is relevant to the motions now pending before the Court, the Court will briefly summarize all of the issues on appeal with the hope that such a summary may offer clarity as this case moves forward.

On appeal, Plaintiffs argued that the Court erred in the following four material ways: (1) by holding that DHS is not required to issue a demand notice within 90 days; (2) by holding that demand notices may be sent by regular mail; (3) by holding that Plaintiffs forfeited their "notice to both" defense with respect to two bonds; and (4) by failing to find that DHS's breach determination must be made by an authorized DHS employee with supervisory authority.[2] DHS's appeal asserted that the Court erred by

---

[2] The fourth issue was referenced in the beginning of the Fifth Circuit's opinion, but was never addressed thereafter.

holding (1) that DHS's failure to provide notice to both obligors relieves each obligor of its duty; and (2) that a bond is permanently unbreachable, and re-noticing impermissible, in cases where DHS previously sent a form I-166 to the alien.[3]

### 1. Demand Notice Sent More than 90 Days after Entry of Final Removal Order

Plaintiffs appealed this Court's holding that 8 U.S.C. § 1231(a)(1)(A) does not require DHS to issue a demand notice within 90 days. Pursuant to the General Terms and Conditions of the bond contract (the "I-352"), a bond is cancelled as required by "circumstances as provided by statute or regulation." The relevant statute provides that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Plaintiffs' assertion, before this Court and on appeal, was that the mandatory removal date creates an implied term in the bond agreement, requiring DHS to send a demand notice within 90 days.

This Court concluded that 8 U.S.C. § 1231(a)(1)(A) only applies to the government's detention authority, and thus does not require DHS to issue a demand notice within 90 days. The Fifth Circuit affirmed, holding that § 1231 is not an implied term of the bond agreement, and that DHS is not required to send a demand notice within 90 days of a removal order. *AAA Bonding Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 447 F. App'x 603, 608 (5th Cir. 2011).

### 2. Demand Notices Sent by Regular Mail

---

[3] The introduction to the Fifth Circuit's per curiam opinion mischaracterizes the precise issues on appeal and which party raised each issue. For example, it states that DHS's appeal argues that "Plaintiffs forfeited the 'notice to both' defense with respect to two bonds." *AAA Bonding Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 447 F. App'x 603, 607 (5th Cir. 2011). A review of the appellate record makes clear that DHS did not appeal this issue (and would not have, as the Court ruled in DHS's favor); rather, Plaintiffs appealed it, and DHS discussed it in response to Plaintiffs' appeal.

Plaintiffs also appealed this Court's holding that breach determinations may be sent by regular mail. The Code of Federal Regulations requires that, "[i]n any proceeding initiated by the [agency], with proposed adverse effect, service of the initiation notice and of notice of any decision by a[n agency] officer shall be accomplished by personal service." 8 C.F.R. § 103.5a(c)(1). Personal service is defined as either personal delivery or delivery by certified mail. *Id.* § 103.5a(a). The C.F.R. permits service by regular mail for "other types of papers" involved in a proceeding. *Id.* § 103.5a(d). Plaintiffs argued, before this Court and on appeal, that a breach determination has a proposed adverse effect and initiates a proceeding, because it may be appealed with DHS or to the district court.

DHS's position was that it does not treat a breach determination as a "proceeding," and that it is owed deference in its reasonable interpretation of its own regulations. DHS also asserted that its own policy statements make clear that agency policy was to mail notice of a breach determination by regular mail. This Court held that DHS's interpretation was entitled to deference under the Administrative Procedure Act ("APA"), and that breach determinations sent by regular mail gave Plaintiffs proper and timely notice. The Fifth Circuit affirmed, holding that DHS's interpretation is entitled to deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997). *AAA Bonding*, 447 F. App'x at 609.

### 3. Notice to Both

Both parties appealed portions of this Court's holding with regard to what has been termed "notice to both." DHS's argument on appeal was that this Court erred in holding that separate notices must be sent to Safety National and AAA. First, DHS

appealed the Court's holding that "notice to both" is a condition precedent to the obligors' performance.

The I-352 reads: "Address to use for notice purposes: [ ] Obligor [ ] Agent [ ] Both." Plaintiffs selected "[ ] Both." This Court held that, when the "Both" box is checked, "notice to both" becomes a condition precedent to both Safety's and AAA's performance, even in cases where notice was sent to one of the two obligors (Safety or AAA). The Court concluded that neither Safety nor AAA was obligated under the agreement if notice was not sent to both Safety and AAA. DHS urged, in this Court and on appeal, that notice to both obligors is not a condition precedent to performance by either obligor.

The Fifth Circuit agreed with DHS, and held that "notice to both" is not a condition precedent. *Id.* However, it held that when notice is provided to only one obligor, only *that* obligor's duty to act is triggered. *Id.* at 609-10. It further clarified that DHS can enforce a bond only against an obligor that actually receives notice. *Id.* Thus, whereas this Court held that notice to only one obligor failed to meet a condition precedent, meaning that neither obligor had to act, the Fifth Circuit concluded that notice to one obligor triggers *that* obligor's duty to act, but does not impose a duty upon the obligor who did not receive notice.

Secondly, DHS appealed this Court's finding that, when a bond contract so specifies, notice must be sent to both obligors, even if the address provided for each is the same. This Court rejected DHS's argument, concluding that, although two separate notices need not be mailed to the same address, the notice sent must identify both obligors as recipients. The Fifth Circuit affirmed.

### 4.   Forfeit of "Notice to Both"

Plaintiffs appealed this Court's holding, in the 2010 Order, that Plaintiffs' "notice to both" defense was forfeited with respect to two bonds. Plaintiffs' position was that DHS failed to give the requisite notice to both when it did not attach the questionnaire that would have allowed the obligors to check the box for "[ ] Both." Plaintiffs contended that failure to provide this questionnaire entitled them to rescission of the declaration of breach. This Court held that Plaintiffs forfeited that issue on appeal to the district court by failing to raise it administratively.

The Fifth Circuit reversed. It held that federal courts do not have the authority to require a plaintiff to exhaust administrative remedies before seeking judicial review under the APA. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993) ("[W]here the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review.") The Fifth Circuit further held that the governing regulations in this case, 8 C.F.R. § 103.6(e), allow, but do not require, administrative review of a breach determination. The Fifth Circuit therefore concluded that Plaintiffs may appeal a breach determination directly to a federal court, and may raise this "notice to both" defense just as they raised it with the other bonds at issue.

### 5.   Run Letters

Finally, both parties appealed a number of issues related to the requirement, under the bond agreement, that notice to obligors to produce the bonded alien must be sent at least three days before notice is sent to the bonded alien. Notice to the bonded alien is

referred to by the parties as the "run letter," apparently because it creates a risk that the alien will leave town before the delivery or deportation date.

### a.  DHS's appeal

The I-352s at issue in this case state that "no demand to produce the bonded alien for deportation/removal shall be sent less than three days prior to sending notice to the bonded alien." DHS has conceded that notice to the obligors is untimely when DHS sends a run letter to an alien less than three days after the demand notice to the obligors. This Court held that, in such a situation, the bond remains forever unbreachable. (Doc. No. 159 at 7-13.)

On appeal, DHS argued that this Court's holding was contrary to the purpose of the bond, because it would deprive DHS of its leverage to compel obligors to produce an alien. DHS urged the Fifth Circuit to find that DHS can cure the defect of sending a premature run letter by sending one again at a later date. The Fifth Circuit affirmed this Court's holding that DHS cannot cure the defect of a premature run letter.

As to run letters, DHS also argued before this Court that the determination of whether a run letter is premature should be based on when the alien received the letter, and not when DHS sent it. The Court disagreed, holding that the question of timely notice depends on when the demand notice and run letter are sent, not when they are received. The Fifth Circuit affirmed this ruling.

### b.  Plaintiffs' appeal

Finally, Plaintiffs appealed this Court's holding that, where there is no evidence in a bonded alien's file that a run letter was sent, no genuine issue of material fact remains as to whether such a letter was sent prematurely. On appeal, Plaintiffs urged that a

genuine issue of material fact existed in such cases, because DHS's routine custom and practice is to send such letters. Plaintiffs argued that the absence of these letters in the aliens' files was inconclusive. The Fifth Circuit affirmed this Court's holding that Plaintiffs' mere speculation does not give rise to a genuine issue of material fact.

## II.   PENDING MOTIONS

### A.  DHS's Motion for Final Judgment on Six Bonds against AAA

The motions pending before the Court relate to six bonds on which DHS contends it is entitled judgment pursuant to the Fifth Circuit's opinion. The six bonds at issue are: (1) Bueno (A97 736 496); (2) Gutierez-Mejia (A78 952 857); (3) Cerda-Rivas (A78 942 712); (4) Ajpuac-Machan (A79 043 251); (5) Morales-Morales (A95 211 678); and (6) Hernadez-Ulloa (A78 956 639). The first of the pending motions is DHS's Motion for Final Judgment against AAA.

#### 1.   AAA received proper notice on these six bonds

The parties do not dispute that AAA received proper notice on all six of the bonds at issue.

##### a.  Bueno and Gutierez-Mejia

In the 2010 Order, the Court granted summary judgment in favor of Defendants on these two bond breach determinations, ruling that Safety National and AAA waived their "notice to both" defense by failing to raise it in administrative proceedings. (Doc. No. 159 at 16-20). The Fifth Circuit reversed, ruling that Safety/AAA "may raise the notice-to-both defense." *AAA Bonding*, 447 F. App'x at 612. At the same time, however, the Fifth Circuit ruled that "[t]he language of the bond agreement does not clearly specify that notice to both obligors was a condition precedent to either obligor's performance"

9

and that "[t]o the extent that one obligor received a demand notice on the disputed bonds, that obligor was required to perform and, subject to any other deficiencies, the bond breach determination is enforceable." *Id.* at 609. For these two bond breach determinations, it is undisputed that AAA received proper notice.

### b. Cerda-Rivas and Ajpuac-Machan

This Court granted summary judgment in favor of Safety National and AAA on these two bond breach determinations, holding that, "when the same address is listed separately for both Safety National and AAA and the 'Both' box is checked, notice must be sent to the listed address as associated with both parties, regardless of whether one or two copies of the notice are ultimately mailed out." (Doc. No. 159 at 13-16). While the Fifth Circuit found no error in this conclusion, *AAA Bonding*, 447 F. App'x at 610, its ruling on "notice to both" still applies; that is, an obligor that received a demand notice is required to perform. For these two bond breach determinations, it is undisputed that AAA received proper notice.

### c. Morales-Morales and Hernandez-Ulloa

This Court granted summary judgment in favor of Safety National and AAA on these two bond breach determinations, holding that "Run Letters sent less than three days after proper notice of demand renders the bond forever un-breached, even if the Run Letter is later returned to sender as undeliverable. . . . These bonds cannot be breached in the future." (Doc. No. 159 at 7-13). While the Fifth Circuit found no error in this conclusion, *AAA Bonding*, 447 F. App'x at 611, its ruling on "notice to both" still applies, because the run letters at issue in both of these bond breach determinations were sent

more than three days after notice of demand to Safety and AAA. Thus, for these two bond breach determinations, it is undisputed that AAA received proper notice.

### 2.  AAA's Request for Discovery

Although AAA does not dispute that it received proper notice on the six bonds at issue, it asks the Court to defer consideration of this motion so that AAA can take discovery of the A-files for these six aliens. AAA highlights the Fifth Circuit's statement that, "[t]o the extent that one obligor received a demand notice on the disputed bonds, that obligor was required to perform and, *subject to any other deficiencies*, the bond breach determination is enforceable." *AAA Bonding*, 447 F. App'x at 610 (emphasis added). AAA urges that discovery of the A-files is necessary to determine whether there are any "other deficiencies" that render the bond breach determination unenforceable. This language in the Fifth Circuit's opinion does not support AAA's request for discovery.

Federal Rule of Civil Procedure 56(d) provides that, if a nonmovant shows that "it cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may:  "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). AAA is requesting that, for the six bond breach determinations that were conclusively resolved by the Fifth Circuit following a summary judgment process in this Court spanning multiple years, it be granted leave to conduct further discovery. The basis for this request apparently is the possibility, unsupported by facts, that discovery of these six A-files might reflect other deficiencies which theoretically could render the bond breach determinations unenforceable.

The Fifth Circuit did not intend such a result. Its reference to "other deficiencies" serves only to clarify that its holding as to notice does not make bond breach determinations enforceable if those determinations have other deficiencies. If AAA believed that there were other deficiencies in these six bond breach determinations, it should have alleged such deficiencies earlier in this case; surely, AAA did not need the Fifth Circuit to tell it that other deficiencies as to the bond breach determinations would be relevant to its claims. AAA's position, under Rule 56(d), that further discovery might reveal facts of which AAA is currently unaware, is insufficient to defer ruling on the pending motion. In accordance with the Fifth Circuit's holding on these six bond breach determinations, DHS's Motion for Final Judgment against AAA must be granted.

### B.   Cross-Motions for Final Judgment by DHS and Safety National

The pending cross-motions for final judgment filed by DHS and Safety National relate to the same six bonds discussed above. With respect to these six bonds, there is no dispute that, though proper notice was provided to AAA, DHS failed to provide notice to Safety National. The Fifth Circuit held that "DHS can only enforce a bond against an obligor that received notice." *AAA Bonding*, 447 F. App'x at 610. At issue here is what the Fifth Circuit meant by the phrase "enforce a bond."

DHS contends that the Fifth Circuit was referring only to DHS's ability to require an obligor to produce the alien, not its ability to recover from an obligor for a bond breach. DHS also urges that it is not seeking to recover from Safety based on Safety's own duty to perform as co-obligor, which, due to lack of notice, never arose; rather, it is pursuing a claim against Safety based upon Safety's connection with AAA, which received proper notice and does have a duty to perform. Safety maintains that neither

joint and several liability nor Safety's role as a surety for AAA counters the Fifth Circuit's conclusion that, as to these six bonds, Safety's duty to act is not triggered. Thus, the Court must determine whether, in holding that DHS can enforce a bond only against an obligor that received notice, the Fifth Circuit meant to issue so narrow a holding that DHS can recover from Safety on bonds as to which Safety indisputably never received notice.

As an initial matter, the context of the appeal leaves no doubt that the Fifth Circuit was considering the liability of Safety and AAA, and not just their responsibility to perform through delivery of aliens. In its briefing to the Fifth Circuit, DHS repeatedly asked the court to rule on Plaintiffs' financial liability for the alleged bond breaches, arguing that "the co-obligors here have agreed to a scheme under which each is *financially liable* for the other's failure to perform and may be sued separately." (Appellant's Brief, Doc. No. 231-A at 29 (emphasis added).) In support of its liability arguments, DHS directed the Fifth Circuit to a number of joint and several liability provisions in the bond contract, arguing that these provisions supported a finding that both Safety and AAA were liable for breaches by the other party. (*See, e.g.*, Appellant's Brief, Doc. No. 231-B at 14 ('[T]he joint-and-several liability provision only highlights the unity of interest between Safety and AAA and the breadth of liability they share for any breach of duties by the other party."))[4] Thus, the record makes clear that DHS repeatedly asked the Fifth Circuit to rule on Plaintiffs' liability for the alleged bond

---

[4] DHS also argued that "[t]he bonding agent and the surety are 'co-obligors' on the bond, and are jointly and severally liable for the face amount of the bond if it is breached." (*Id.* at 4.)  They further explained that "[t]he bond states that '[a]ny obligation or duty imposed on an obligor by this contract applies equally to all co-obligors,' and thus establishes a relationship in which obligors know that they may be held liable for any failed performance by their co-obligor." (*Id.* at 29.)

breaches, and not on simply Plaintiffs' responsibility to produce aliens. Moreover, the Fifth Circuit surely considered DHS's position on appeal that, "where notice to one surety is effectively notice to the other—as where two obligors are jointly and severally liable on a bond—a deficiency in the notice provided to one does not relieve both obligors of liability." (Appellant's Brief, Doc. No. 231-A at 30.) In holding that DHS can enforce a bond only against an obligor that actually receives notice, the Fifth Circuit rejected DHS's position that joint and several liability allows it to recover against an obligor that does not receive notice. It thus considered, and dispensed with, the very argument that DHS seeks to assert here.

Finally, the plain language of the Fifth Circuit's opinion supports the conclusion that the Fifth Circuit was referring not simply to an obligor's responsibility to produce the alien, but to the obligor's financial liability, as well. By using the word "enforce" ("DHS can only enforce a bond against an obligor that received notice"), the Fifth Circuit undoubtedly was describing DHS's ability to hold obligors financially liable in the event of a breach. Indeed, that is the only mechanism by which DHS can actually "enforce" a bond. In light of the Fifth Circuit's holding on "notice to both," and because it is undisputed that Safety did not receive notice on these six bonds, Safety's motion on these six bonds must be granted, and DHS's motion must be denied.

### C. AAA's Motion for Scheduling Conference

Finally, AAA moves for a Rule 16(a) scheduling conference so that the Court can set up dates for the discovery of A-files that AAA seeks. (Doc. No. 220.) The Court finds that this request was premature when filed (the Court has not granted discovery of any A-files), and hopes that the resolution of the motions for final judgment clarifies certain

issues such that the extensive discovery sought is unnecessary. At the most recent hearing, the parties appeared to be working together to devise a process by which discovery could proceed in this case. The Court urges the parties, as it has in the past, to continue these discussions and come up with a practical solution to the discovery problem. This motion is therefore denied without prejudice to refiling. If, after working with opposing counsel to resolve their remaining disputes, AAA still believes that further discovery is warranted, the Court will entertain a discovery motion at that time.

## III.    CONCLUSION

For the reasons discussed above, the Court finds that DHS's Motion for Final Judgment against AAA must be **GRANTED**. Safety's Motion for Final Judgment also must be **GRANTED**. DHS's Cross-Motion for Final Judgment against Safety must be **DENIED**. AAA's Motion for Scheduling Conference also must be **DENIED.**

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court expressly determines that there is no just reason for delaying entry of final judgment with respect to the liability of Safety National and AAA on the six bonds at issue.

**IT IS SO ORDERED.**

Signed this the 21st day of March, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE